## Case No. 14,089.

### TOMPKINS v. HOWARD.

[1 Spr. 167.] [1]

District Court, D. Massachusetts. Jan., 1849.

FISHERIES — SHIPMENT DURING VOYAGE — APPORTIONMENT OF LAY.

Where, after a part of a whaling voyage had been performed, a mariner shipped in a foreign port, for the residue of the voyage, at a lay of one-ninetieth, and performed his contract, and returned in the vessel to her home port: Held, that he was entitled to one-ninetieth of all the oil, and other products of the voyage, taken during his time of service.

In admiralty.

Adam Mackie, for libellant.

H. G. O. Colby, for respondent.

SPRAGUE, District Judge. The ship Cowper sailed from New Bedford, on a whaling voyage, to the Pacific Ocean, on the 3d day of June, 1845. On the 18th of February, 1847, after a quantity of oil had been taken, the libellant shipped at Valparaiso, as set forth in the answer, "for and during the remainder of the voyage," as boat-steerer, at a lay of one-ninetieth, and at that time, signed the shipping articles. The ship proceeded on her voyage, took more oil, and returned to New Bedford, on the 24th September, 1848.

1 [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

The question is, whether the libellant is entitled to one-ninetieth of all the oil taken, after he joined the ship, or such a proportion of one-ninetieth of all the oil taken, during the whole voyage from New Bedford, until her return, as the time he served was of the whole voyage.

The shipping articles were in the usual form, as set forth in the appendix to Curtis's Merchant Seamen, and were signed by all the original crew, before sailing from New Bedford, and were subsequently signed by the libellant, without alteration, his share and station being at the same time entered opposite to his name. Although such contracts, in whaling voyages, are frequent, it is agreed that there is no established usage at the port of New Bedford, as to the mode in which the lay is to be calculated; nor has any authority been adduced, bearing forcibly upon this question. In the case of Shaw v. Mitchell, 2 Metc. [Mass.] 65, the plaintiff was shipped during the voyage, and discharged before its termination, and the decision turned upon the construction of the agreement made at the time of his discharge. In Luscom v. Osgood [Case No. 8,608], the whole controversy related to services performed before the shipping paper was signed, and the question decided was of a quantum meruit, and not a construction of any express agreement. In the case now before the court, the mode of estimating the lay is to be deduced from the articles, and the facts and circumstances existing at the time they were signed. The first article is as follows: "It is agreed between the owner, master, seamen, and mariners of the ship Cowper, Benjamin B. Howard, master, bound from the port of New Bedford, on a whaling voyage, in any oceans, bays, or seas in the world; that in consideration of the share against each seaman or mariner's name, hereunder set, they severally shall and will perform the above-mentioned voyage; and the said owner and master, do hereby agree with, and hire the said seamen, or mariners, for the said voyage, at such shares of the net proceeds, or of the actual products of the voyage, to be paid pursuant to this agreement, and the custom and usage in the port of New Bedford." This phraseology refers exclusively to the whole original voyage, but is not adapted to the contract which, it is conceded on all hands, was made by the libellant. The answer itself expressly admits, that the contract of the libellant was made nearly two years after the commencement of the original voyage, and was for the remainder of such voyage. If then, at the time the libellant signed the articles, they had been so changed as to adapt them to his contract, they must have described the voyage to be one from Valparaiso "to any oceans, bays, or seas, until her return to New Bedford," or have stated the contract to be for the residue of said original voy-

age. And when it is stated, that the party is hired "for the said voyage, for such shares of the net proceeds, or of the actual products of the voyage," it is clear that he is to have such share of the proceeds of the voyage, for which he is hired, viz: from "Valparaiso," &c., or the residue of the voyage. This, as to the libellant, means the voyage after the 18th February, 1847. The seventh article begins as follows: "Each and every officer and seaman, who shall well and truly have performed the above-mentioned voyage, complied with the regulations and duties herein specified, and committed no dishonest or unlawful acts, shall be entitled to the payment of his share of the net proceeds of the voyage, pursuant to this agreement," &c. If this were to be construed as referring to the original voyage, the libellant could never be entitled to anything, as he could never have complied with the condition of performing that part of the voyage, which had expired before he contracted. It is clear, then, as to him, the article must read, if he shall well and truly have performed the voyage for which he engaged, "he shall be entitled to the payment of his share of the net proceeds of the voyage," which, as to the libellant, must mean the voyage for which he contracted. The seventh article provides, that "in case of sickness, or death of any mariner, his legal representative shall be entitled to such part of the whole amount of his stipulated share, as the time of his service on board shall be of the whole term of the voyage." It has been suggested, that if a person who shipped after the voyage had been partly performed, should die before its termination, his share must be of the whole original voyage, in proportion to the time he served. But that is not the necessary conclusion. The voyage, as to him, is that for which he contracted; and if he dies before the termination of his voyage, his share for such voyage is to be reckoned upon the principles of the seventh article, and to be such proportion of the stipulated lay of the voyage for which he engaged, as the time he served bore to the whole of such voyage. It has also been urged, that as the man shipped abroad takes the place of some predecessor, whose lay must be calculated upon the whole voyage, it would be proper, that the successor's lay should also be calculated on the whole voyage, each having his proportion; and thus the owners would pay the compensation of one man for the whole voyage. But it is not shown, and cannot be assumed, that the libellant was the successor of any particular person. It is known that ships sometimes sail on these voyages, without a full crew, intending to ship men at a foreign port. In other cases, men desert, to whom no compensation is to be paid, and, in all cases where men are shipped abroad, each makes his own contract, according to his skill and ability as a whaleman, and the circumstances in which he is placed, and stipulates for his own share, or lay, without being governed by that of any predecessor. In making this important stipulation, I think he would have reference to the services which he was to perform, and the voyage for which he was about to engage, rather than to the whole original voyage.

I am of opinion, therefore, that, construing these articles by the light of the facts and circumstances, existing at the time the libellant shipped, and of the contract, which it is known and conceded that he actually made, he is entitled to one-ninetieth of all the oil and other products of the voyage, taken during his time of service on board the ship, i. e., from the 18th February, 1847, until her return to New Bedford.